**R. F. RHINE, Plaintiff,**

v.

**UNION CARBIDE CORPORATION,
Defendant.**

**Civ. A. No. 1229.**

United States District Court
W. D. Kentucky,
Paducah.

Sept. 3, 1963.

See also D.C., 208 F.Supp. 785.

Francis T. Goheen, Paducah, Ky., for plaintiff.

Adrian H. Terrell, Paducah, Ky., Ward Rafferty, Law Dept., Union Carbide Corp., New York City, for defendant.

SHELBOURNE, District Judge.

This action was instituted in the Mc-Cracken Circuit Court on December 1, 1961, by R. F. Rhine, plaintiff, against Union Carbide Corporation seeking to recover the difference between plaintiff's standard weekly wages as defendant's employee prior to December 3, 1956, and the amount received by plaintiff from Workmen's Compensation and Employee's Group Insurance payments because of an occupational disability arising out of and in the course of his employment with the defendant. As an hourly rated employee of the defendant at its plant near Paducah, Kentucky, plaintiff was a member of and was represented by the Oil, Chemical and Atomic Workers International Union, CIO, and its Local 7–550. The suit is based upon the provisions of the contract between the union and the defendant corporation relating to occupational disability pay.

By its award of December 1, 1959, the Kentucky Workmen's Compensation Board, upon a Full Board Review, affirmed its award of July 21, 1959, which adjudged plaintiff to be totally and permanently disabled due to cirrhosis of the liver, a disease resulting from his exposure to chlorinated hydrocarbons in the course of his employment with the defendant, and awarded him compensation of $32.00 per week commencing December 4, 1956.

Plaintiff's complaint alleges that the award and adjudication of the Kentucky Workmen's Compensation Board was in full force and effect at the time the action was instituted in the McCracken Circuit Court.

December 19, 1961, defendant filed a petition and bond for removal of the action to this Court under the provisions of Section 1441 of Title 28, claiming jurisdiction under Section 1332 of Title 28, United States Code. The petition alleges that more than $10,000.00, exclusive of interest and costs, is involved. The amount in controversy in this action admittedly exceeds the jurisdictional requirement. Diversity of citizenship is claimed to exist in that the plaintiff, R. F. Rhine, is a citizen and resident of the State of Illinois and the defendant is a corporation created and existing under the laws of the State of New York with its office and principal place of business in New York City.

The complaint alleges that at all times from December 4, 1956 up to the date of the filing of the complaint, except

on February 15 and April 29, 1957, plaintiff was absent from work because of his occupational disability arising out of and in the course of his employment; that he was prevented from working by such disability, and that he was excused from reporting to defendant's plant dispensary for treatment at or before his regular starting time each work day and at all other times, except on February 15 and April 29, 1957.

The complaint, as amended, alleges that during a period of thirteen weeks from December 4, 1956 to March 6, 1957, the defendant paid plaintiff an amount per week equivalent to the difference between his straight time earnings of $100.80 and the weekly Workmen's Compensation and Employee's Group Insurance payments he received; that during a period of seven weeks from March 6, 1957 to April 24, 1957, plaintiff received no payments from Employee's Group Insurance and received $32.00 from Workmen's Compensation and $50.72 from the defendant for a total of $82.72 per week, which was $18.08 less than his straight time earnings; that during the period from April 24, 1957 to October 24, 1962, a total of 287 weeks, plaintiff received Workmen's Compensation payments in the amount of $32.00 per week and no payments from the defendant or Employee's Group Insurance, making a difference of $72.80 [sic] per week between the amount plaintiff received and his straight time earnings.

January 23, 1962, defendant filed its motion to dismiss the complaint on the grounds that plaintiff has failed to show that he has exhausted his administrative remedies under the contract of employment and the Court does not have jurisdiction over the subject matter of this action. Defendant filed its amended motion to dismiss on February 26, 1962, stating that defendant is subject to the jurisdiction of the National Labor Relations Board and plaintiff is required by law to pursue and exhaust his contractual remedies and his remedies under the National Labor Relations Act, which he has not alleged that he has done. In an order of this Court entered July 26, 1962, the motion to dismiss, as amended, was overruled.

Defendant alleges in its answer that plaintiff has not pursued or exhausted the administrative remedies provided and required under the labor-management contract between the defendant and the union representing the plaintiff and that the Court is without jurisdiction to hear and decide the matters alleged in the complaint. It is alleged that plaintiff is not a party to the contract sued on and has no cause of action under said contract; that the right to sue for breach of any of the contractual provisions is vested exclusively in the union.

Defendant denies that plaintiff was at all times an hourly rated employee, and was not a guard, represented by the union under and pursuant to the contract. It is alleged that plaintiff's employment was terminated on April 29, 1957, and that since that time he has not been an employee of the defendant or represented by the union. Defendant denies that plaintiff is totally or permanently disabled since December 3, 1956 as a result of an occupational disability arising out of and in the course of his employment with defendant. It is admitted that the contract with the union in effect while plaintiff was employed by defendant contained the provisions quoted in the complaint, including Article IX, Section 4, but denies that plaintiff has been an employee of the defendant as the term is used in said contract, or in any other way, since April 29, 1957, and denies that the contract still governs the rights, obligations, and duties between the plaintiff and defendant.

Defendant admits that it has refused and still refuses to permit plaintiff to work and has refused to pay him any wages since his employment was terminated on April 29, 1957.

Defendant alleges that plaintiff made no claim for occupational disability benefits during the period from December 4, 1956 to April 29, 1957, therefore, he did not become eligible and has never been eligible to receive occupational disability

pay. It is alleged that between those dates plaintiff made claims for and was paid non-occupational disability benefits; that he represented to defendant that he was disabled by a non-occupational illness; that, by making claim for non-occupational disability and causing defendant to pay benefits for such disability plaintiff is estopped to maintain this action for recovery of occupational disability benefits under the contract.

April 13, 1963, subsequent to a trial to the Court without a jury, the defendant renewed its motion to dismiss for lack of jurisdiction.

## FINDINGS OF FACT

From the testimony heard at the trial, exhibits filed, and briefs of counsel, the Court makes the following findings of fact:

(1) In November, 1952, R. F. Rhine was employed as an hourly rated employee by Union Carbide Corporation at its plant near Paducah, Kentucky. Prior to his acceptance for employment he was required to have a physical examination and was found to be in good physical condition. He worked as a chemical operator preparing feed for the company's diffusion plant and in the performance of his duties he was exposed to certain chemicals classified as chlorinated hydrocarbons. Rhine worked regularly until December 3, 1956, and during that time he was a member of and was represented by the Oil, Chemical and Atomic Workers International Union CIO, and its Local 7-550, the bargaining agency for Union Carbide Corporation's employees at its Paducah plant.

(2) October 15, 1955, Union Carbide Corporation and the Oil, Chemical and Atomic Workers International Union, CIO, and its Local 7-550 entered into a new contract governing the terms and conditions of employment of members of the union at the company's Paducah plant. The provisions of the contract involved in this action are:

## "ARTICLE I. PURPOSE

"It is the intent of the parties that this contract will constitute the complete agreement between the parties hereto, and that no additions, waivers, deletions, changes or amendments shall be made during the term of this contract except by written agreement of the parties.

## "ARTICLE II. RECOGNITION

"*Section 1.* In conformity with the Labor-Management Relations Act, the Company recognizes the Union as the sole and exclusive bargaining agent for all hourly rated employees, excluding Guards and salaried employees (semi-monthly or weekly), with respect to rates of pay, wages, hours of employment, and other conditions of employment.

"*Section 2.* The term 'employee' as used herein will mean any person represented by the Union as described in Section 1 above.

\*  \*  \*  \*  \*  \*

## "ARTICLE IX. DISABILITY PAY

"Non-Occupational Disability Pay

"*Section 1.* Eligibility:

\*  \*  \*  \*  \*  \*

"*Section 2.* Conditions of Payment:

\*  \*  \*  \*  \*  \*

"*Section 3.* Amount of Payment:

\*  \*  \*  \*  \*  \*

"*Section 4.* Occupational Disability Pay

"Any employee who is absent from work because of an occupational disability arising out of or in the course of his or her employment, unless purposely self-inflicted, or due to wilful misconduct, violation of plant rules, or refusal to use safety appliances, will be excused from work. When properly approved, an employee will be paid an amount equal to the difference between his straight time earnings and any payments received from Workmen's Compensation and Employees' Group Insurance provided he reports to the plant dispensary for treatment at or before his regular starting time each work day un-

less excused by the Medical Department."

The contract does not contain a provision by which total and permanent disability of an employee shall be determined. It is therefore to be inferred that the contract was made upon the theory that such disability would be controlled by the provisions of the Kentucky Workmen's Compensation statutes, Chapter 341 of the Kentucky Revised Statutes. By this statute the amount of compensation to be paid an employee and the duration of such payments are determined in cases of total and permanent disability.

(3) December 3, 1956, Rhine reported to the company's Medical Department and was examined by Dr. A. N. Ward who advised him that he was unable to determine the nature of his illness and requested him to consult Dr. C. P. Orr, a specialist in internal medicine at Paducah. Dr. Ward called Dr. Orr and made an appointment for Rhine for the following day. After examining him on December 4, 1956, Dr. Orr advised Rhine to remain away from work for an indefinite period.

(4) February 15, 1957, having obtained a certificate from Dr. Orr that he was physically able to return to work, Rhine reported to his foreman at the company's plant and worked a full shift at his regular job but he did not report for work the next day.

(5) From February 15, 1957 to April 29, 1957, Rhine remained under treatment by Dr. Orr. During that period he was hospitalized on several occasions and his illness was finally diagnosed as cirrhosis of the liver.

(6) Dr. Orr having certified that Rhine might return to work on limited duty where he would not be exposed to chemicals, Rhine reported to his foreman on April 29, 1957. The foreman directed him to go to the Personnel Department and report to Mr. Cliff Powell, department head of Chemical Operations, and Mr. Joe White, an administrative officer. They requested him to report to the Medical Department. After an examination, Dr. Ward gave Rhine some papers to deliver to Mr. Powell and Mr. White and he returned to the Personnel Department. The Medical Department permanently restricted him to employment where he would not be exposed to chlorinated hydrocarbons. Rhine was advised by the company officials that because of his illness there was no work available at the plant which he was able to perform. He was discharged and turned in his security badge upon request. Without a security badge Rhine was unable to enter the premises of the plant or gain access to the Medical Department after April 29, 1957.

When Rhine returned to work on April 29, 1957, his illness had been diagnosed as cirrhosis of the liver but he had not been advised as to the extent or duration of his disability and no determination had been made that this condition had been brought about by his exposure to chlorinated hydrocarbons. Prior to that date, the company's Medical Department had not certified that Rhine's employment should be restricted to work where he would not be exposed to chemicals.

(7) April 29, 1957, Rhine filed a grievance through his union protesting his discharge was discriminatory and requesting a work assignment without loss of pay. The grievance was processed through the steps provided in the union contract and was submitted for arbitration. An arbitration hearing was conducted in the offices of the company on July 3, 1957 by Paul H. Sanders, Arbitrator. The Arbitrator's award made July 30, 1957 denied the grievance on the grounds that Rhine had cirrhosis of the liver and had been permanently restricted by Dr. Orr and the company's Medical Department from any exposure to chlorinated hydrocarbons and, if the employee is permanently disabled from performing the regular duties of his job, the company was not under any contractual obligations to provide him with such special duties as might avoid the restrictions of his permanent disability. The Arbitrator upheld the termination of

Rhine's employment but made no decision as to back pay.

(8) On November 21, 1957, the company refused to pay Rhine Workmen's Compensation and denied liability for same, and November 27, 1957 he made application for an award of the Kentucky Workmen's Compensation Board. In its award dated July 21, 1959, the Board adjudged Rhine to be totally and permanently disabled as the result of an occupational disability sustained in the course of his employment with Union Carbide Corporation. He was awarded a weekly compensation of $32.00 per week, commencing December 4, 1956, continuing until further orders of the Board, not to exceed the maximum sum of $13,-600.00, or a period longer than 425 weeks from the date disability began, and payment of medical bills in an amount not to exceed $2,500.00. The award directed that Rhine should receive interest at the rate of six per cent per annum on any and all payments due and not paid.

On motion of the Union Carbide Corporation, a Full Board Review of the award made July 21, 1959 was had and the award was affirmed by an award of the Board dated December 21, 1959.

(9) Rhine's straight time earnings as an hourly rated chemical operator were $100.80 per week from November, 1952 up to and including December 3, 1956.

In a period of thirteen weeks from December 4, 1956 to March 6, 1957, he received aggregate weekly payments from the company, Workmen's Compensation, and Employees' Group Insurance in an amount equivalent to $100.80 per week.

For the seven weeks from March 6, 1957 to April 24, 1957, Rhine received $50.72 from the company and $32.00 Workmen's Compensation for a total of $82.72 per week, which was $18.08 less than his straight time earnings.

From April 24, 1957 to October 24, 1962, a period of 287 weeks, Rhine received weekly Workmen's Compensation payments of $32.00 or $68.80 per week less than his straight time earnings.

The payments of $50.72 per week made to Rhine by the company prior to April 24, 1957 were made under the provisions of the union contract covering non-occupational disability and were made prior to the diagnosis of Rhine's illness or the determination that it was an occupational disability.

## CONCLUSIONS OF LAW

(1) In the proceedings had before the Kentucky Workmen's Compensation Board, the defendant at no time asserted that the Board lacked jurisdiction. After the Board determined that the plaintiff, Rhine, was totally and permanently disabled by its award made December 1, 1959, he instituted this action in the McCracken Circuit Court and it was removed to this Court by the defendant. By its motion filed January 23, 1962, the defendant questioned this Court's jurisdiction on the grounds that plaintiff had failed to allege that he had exhausted the administrative remedies provided under the union contract, which defendant claims is a condition precedent to plaintiff's right to institute the action. The Court denied the motion to dismiss for lack of jurisdiction.

Defendant alleges in its answer that plaintiff had no right to institute this action, and that an action seeking relief under the contract could only be instituted by the union under Section 185 of Title 29, United States Code.

The Court is of the opinion that the defendant is not in a position to raise that question. It discharged the plaintiff on April 29, 1957, claiming the right to discharge him because of his permanent disability, and caused him to surrender the badge which allowed him access to defendant's plant. On the day his employment was terminated, the plaintiff filed a grievance through his union protesting his discharge was discriminatory and requesting a work assignment without loss of pay. At the conclusion of the grievance procedure provided by the contract, including an arbitration hearing, the Arbitrator held that his discharge was not discriminatory but did

not rule on the question of back pay. Subsequently, plaintiff instituted his proceeding before the Kentucky Workmen's Compensation Board seeking an award that his disability was due to an occupational disease incurred in the performance of his duties as an employee of the defendant.

Although defendant claims that plaintiff has had no status as an employee or as a member of the union since he was discharged April 29, 1957 and is not entitled to benefits under the contract, it also claims to the contrary that plaintiff, being an employee, cannot maintain this action in his name and right and is restricted to the grievance and arbitration procedure provided in the contract.

(2) The proceeding before the Workmen's Compensation Board conclusively established that plaintiff is totally and permanently disabled and that his disability began December 4, 1956.

(3) The adjudication of plaintiff's disability by the Workmen's Compensation Board is res judicata. Hysteam Coal Corp. v. Ingram, 283 Ky. 411, 141 S.W.2d 570. In 100 C.J.S. Workmen's Compensation § 657, p. 992, it is said that an award by the Board is an adjudication that the employee was injured in the regular course of his employment and that an award of compensation for total and permanent disability implies a finding that claimant cannot continuously follow a gainful occupation without material injury to his health and danger to his life.

(4) Article IX, Section 4 of the union contract obligated the defendant, in the event of plaintiff's absence from work because of an occupational disability arising in the course of his employment, to pay plaintiff an amount equal to the difference between his straight time earnings and payments received from Workmen's Compensation and Employees' Group Insurance each week.

No tribunal other than the Workmen's Compensation Board had authority to fix the amount which plaintiff could receive as disability compensation. Plaintiff's certificate of insurance under the Employees' Group Insurance plan maintained for defendant's employees determined the amount of his insurance benefits, and the company's payroll determined the amount of his standard weekly wages.

The defendant contends that it is not liable to Rhine because he was discharged on account of his disability. On the date plaintiff was discharged, his illness had been diagnosed as cirrhosis of the liver and his employment had been permanently restricted by Dr. Orr and defendant's Medical Department to work where he would not be exposed to chlorinated hydrocarbons, but it had not been determined that his was an occupational disability or that he was totally disabled.

Defendant's Personnel Superintendent, John M. Ball, testified that the fact that Rhine's disability was occupational had nothing to do with the termination. The determination that he should be discharged was based upon the fact that he could not perform his job regardless of whether his disability was occupational or non-occupational.

(5) Despite its claim that plaintiff's membership in the union and his right to benefits under the contract terminated with his discharge, defendant contends that plaintiff is not entitled to any payment under the provisions of Article IX, Section 4 by reason of his failure to comply with the requirements relative to reporting to the plant dispensary for treatment. Prior to April 29, 1957, plaintiff had no reason to believe that his illness resulted from an occupational disease. On that date he was required to surrender his badge which gained him admittance to defendant's plant and thereafter he did not have access to the dispensary. The plaintiff testified that between December 4, 1956 and April 29, 1957, except on February 15, 1957, he was excused from reporting to the dispensary by Dr. Ward and this was not denied. In view of these facts, defendant's contention that plaintiff's failure to report daily to the plant dispensary, without being excused from reporting,

constituted a breach of the union contract is without merit.

## CONCLUSION

The question of what relief a terminated employee may seek by court action as against the administrative procedure provided by the labor-management contract may present another problem of a Delphic nature. San Diego Unions v. Garmon, 359 U.S. 236, 241, 79 S.Ct. 773, 3 L.Ed.2d 775. See also Smith v. Evening News Assn., 371 U.S. 195, 199, 83 S.Ct. 267, 9 L.Ed.2d 246.

■ It is the opinion of the Court that the plaintiff in this case has been conclusively shown to have been totally and permanently disabled on and after December 4, 1956 by an insidious disease which his attending physicians had difficulty diagnosing. Plaintiff refused to believe that he was so disabled until he was faced with the inability to continue his work and the termination of his employment. He at once proceeded to exhaust the administrative procedures set forth in the contract by protesting his discharge. When the Arbitrator's final award upheld his discharge by defendant, the plaintiff promptly filed his application for an award of the Workmen's Compensation Board. At the time the Board's award became effective after a Full Board Review, plaintiff was no longer a member of the union, he no longer had the status of an employee, and he brought this action seeking a definite amount which the contract with the defendant provided that he should be paid. This presented a simple action for breach of contract for an amount about which there is no dispute if he is entitled to recover at all.

■ The issue of arbitrability is a question for the courts and is to be determined by the contract between the parties. United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409; Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462; Drake Bakeries v. Bakery Workers, 370 U.S. 254, 256, 82 S.Ct. 1346, 8 L.Ed.2d 474.

■ Plaintiff is entitled to recover in this action. Plaintiff's counsel, upon notice to defendant's counsel, will tender a judgment in accordance with this conclusion.