R. F. RHINE, Plaintiff-Appellee,

v.

UNION CARBIDE CORPORATION, Defendant-Appellant.

No. 15646.

United States Court of Appeals Sixth Circuit.

March 17, 1965.

---

E. H. Rayson, Knoxville, Tenn., for appellant, Adrian H. Terrell, Paducah, Ky., John B. Rayson, Knoxville, Tenn., on the brief, Terrell, Schultzman & Hardy, Paducah, Ky., Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, Tenn., of counsel.

Francis T. Goheen, Paducah, Ky., for appellee.

Before O'SULLIVAN and EDWARDS, Circuit Judges, and STARR, District Judge.

EDWARDS, Circuit Judge.

This appeal results from a judgment for plaintiff in the sum of $18,872.06 entered by a U. S. District Judge in the Western District of Kentucky. The facts and controversies resulting in that judgment are fully set forth in the opinions of the District Judge reported in Rhine v. Union Carbide Corp., 208 F.Supp. 785 (W.D.Ky.1962) and at 221 F.Supp. 701

(W.D.Ky.1963). Since at the moment we deal with only one of the several issues argued on this appeal, we will recite only such facts as are essential to its determination.

Defendant-appellant Union Carbide operates an Atomic Energy Commission plant at Paducah, Kentucky. Prior to December 4, 1956, plaintiff-appellee Rhine was employed by defendant as a chemical operator preparing "food" for the diffusion plant. In the performance of his duties he was exposed to chemicals classified as chlorinated hydrocarbons.

Plaintiff became ill in December 1956. Though the cause of his illness (cirrhosis of the liver) was not diagnosed, he was ultimately told by doctors to whom he had been referred by defendant not to continue to work where he was subjected to the former exposure. Defendant then told plaintiff that they had no other work available for him and discharged him.

At the time defendant had a labor contract with a union[1] representing its employees which provided for a grievance procedure terminating in arbitration. Plaintiff contested his discharge through this procedure and through arbitration. The award of the arbitrator, dated July 3, 1957, upheld the discharge on the ground that plaintiff was permanently disabled from his regular work and the company had no obligation under the contract to provide other employment for him. It is clear that no claim had been advanced in the arbitration proceeding that plaintiff's disability was caused by his occupation, since no doctor to that date had told plaintiff any such thing.

Two years later, on the basis of facts which were not before the arbitrator, the Kentucky Workmen's Compensation Board adjudged plaintiff to be totally and permanently disabled as a result of occupational disability suffered in the course of his employment with defendant.

At the time of plaintiff's illness, and at the time of his discharge, the labor-management contract contained an unusual provision:

"Section 4 Occupational Disability Pay.

"Any employee who is absent from work because of an occupational disability arising out of or in the course of his or her employment, unless purposely self-inflicted, or due to wilful misconduct, violation of plant rules, or refusal to use safety appliances, will be excused from work. When properly approved, an employee will be paid an amount equal to the difference between his straight time earnings and any payments received from Workmen's Compensation and Employees' Group Insurance provided he reports to the plant dispensary for treatment at or before his regular starting time each work day unless excused by the Medical Department.

"Section 5. All disability payments provided for in this contract shall be reduced by the amount or amounts of any other benefits which might be provided through state or federal legislation for the same type of disability and for the same period of absence."

The same contract's grievance procedure provided for processing a grievance through three grievance steps before proceeding to arbitration. It also provided that a decision of the company at any step of the grievance procedure was deemed to be "final and binding unless the grievance is arbitrable as defined in Article XIV, Section (1), in which case it may be submitted to arbitration."

Article XIV, entitled "Arbitration" provided as follows:

"Section 1. If a grievance is not satisfactorily settled by the procedure outlined in Article XIII, the grievance may be submitted to arbitration if it involves the meaning or application of the contract.

---

1. The Oil, Chemical and Atomic Workers International Union, Local 7550.

"Section 2. Within fifteen (15) days after the decision rendered by the Company in the Third Step of the Grievance Procedure either party desiring to arbitrate a matter which is subject to arbitration under the terms of this contract may request the Director of the Federal Mediation and Conciliation Service to appoint an arbitrator in accordance with the policy of the Service. Simultaneously a copy of such letter will be sent to the other party. The decision rendered in the matter by the arbitrator shall be final and binding on both parties except as provided in the following Section 3.

"Section 3. The arbitrator acting under Section 2 of this Article shall not have the power to add to, to disregard, or to modify any of the provisions of this contract, nor shall he have the power to change any penalty imposed by the Company, unless, upon the facts of the case presented before him, he finds that the Company has violated the terms of this contract, or has acted in an arbitrary or unreasonable manner."

Plaintiff first made a claim on defendant for "Occupational Disability Pay" under this contract in October 1961. This claim was made by letter addressed to defendant by plaintiff's attorney and made no reference to arbitration. When defendant simply disclaimed any liability, plaintiff filed suit on the contract in McCracken County Circuit Court in Kentucky. Defendant thereupon filed a petition to remove the case to the U. S. District Court for the Western District of Kentucky on grounds of diversity of citizenship and this petition was granted. Thereafter defendant made a motion to dismiss, claiming, among other things, plaintiff's failure to exhaust his remedies by arbitration. The motion was denied.

After trial to the Court without a jury, the District Judge filed an opinion containing findings of fact and conclusions of law resulting in the judgment for plaintiff previously referred to.

In his opinion on the motion to dismiss (208 F.Supp. 785) the District Judge decided that plaintiff was not barred from maintaining the action by failure to exhaust his remedies by arbitration because "the law of Kentucky makes invalid and unenforceable an agreement between parties to a contract to arbitrate all of the disputes thereafter to arise thereunder as constituting attempt to oust the legally consituted courts of their jurisdiction." [2] He relied in this regard upon Gatliff Coal Co. v. Cox, 142 F.2d 876 (C.A. 6, 1944).

In his opinion after trial (221 F.Supp. 701) the District Judge held that the Kentucky Workmen's Compensation Board's award rendered *res adjudicata* the issue of whether or not plaintiff's disability was occupational; that the provision of the contract relied upon by plaintiff was clear and unambiguous; that on the facts established plaintiff was entitled to the recovery sought and that defendant could not defeat such recovery by reliance upon its discharge of plaintiff.

On appeal defendant disputes each of these holdings but reserved its principal attack for the exhaustion of remedy problem dealt with in the opinion on the motion to dismiss.

As to this issue we believe the District Judge was in error. This suit is founded squarely and solely upon a provision contained in a labor-management collective bargaining agreement in interstate commerce. We believe that this case must be treated as arising under § 301 of the National Labor Relations Act, 29 U.S.C. § 185; Smith v. Evening News, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Fraser v. Magic Chef-Food Giants Markets, Inc., 324 F. 2d 853 (C.A. 6, 1963). The applicable law, therefore, is not Kentucky law (as

2. Since we hold that this case is governed by federal law, we express no view on this construction of Kentucky law.

held by the District Judge) but federal law.

■ Under federal law it is now a clearly established national policy to encourage the use of arbitration. This is manifest in the statutory expressions of the Congress. 29 U.S.C. § 173(d); 9 U.S.C. §§ 3 and 4. It is even more explicitly detailed in recent opinions of the United States Supreme Court, United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960).

In this case the labor-management contract provided for "final and binding" arbitration if the grievance "involves the meaning or application of the contract."

■ In United Steelworkers v. American Manufacturing Co., supra, the Supreme Court said:

> "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not to be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for." United Steelworkers v. American Manufacturing Co., supra at 567–568, 80 S. Ct. at 1346.

This has recently been reiterated even more strongly in Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) decided by the United States Supreme Court, January 25, 1965—after the instant appeal

had been argued to this court. Maddox presents a factual situation rather more similar to the facts in the instant appeal than any other precedent we have discovered. In it the Supreme Court held that Maddox's suit for severance pay fell within the purview of Sec. 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a); that the labor-management contract therein required arbitration and that "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." (Emphasis in original.)

We now apply these identical rulings to the appeal before us and remand this case to the District Court for further proceedings.

■ Generally the question of whether a grievance is subject to arbitration is a matter for the court to decide; United Steelworkers v. Warrior & Gulf Nav. Co., supra; John Wiley & Sons, Inc. v. Livingston, etc., 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Jefferson City Cabinet Co. v. International Union, etc., 313 F.2d 231 (C.A. 6, 1963), and usually procedural questions are to be determined by the arbitrator. Capitol Airways, Inc. v. The Airline Pilots Association International, 341 F.2d 288 (C.A.6, 1965).

The Trial Judge did not reach these issues, since he held that he was precluded from doing so by Kentucky law.

■ "On its face" the claim involved in this litigation is clearly "governed by the contract," and it appears to us that arbitration should have been attempted prior to filing of this suit.

On remand, recourse may be had to reference to arbitration under the policy set forth in Sec. 3 of the Federal Arbitration Statute, 9 U.S.C. § 3.

Judgment vacated; reversed and remanded for further proceedings consistent with this opinion.