Robert **HILL**, Plaintiff,

v.

The **ARO CORPORATION** et al., Defendants.

No. C 66–202.

United States District Court

N. D. Ohio, W. D.

Nov. 14, 1967.

Howard E. Petersen, LaGrange, Ind., Edgar A. Grimm, Kendallville, Ind., for plaintiff.

Robert Gosline, Toledo, Ohio, for Aro Corp.

Donald Fisher, Toledo, Ohio, for Union.

## OPINION

DON J. YOUNG, District Judge:

Robert Hill brought this action against his former employer, The Aro Corporation, his union, The International Association of Machinists, Lodge No. 1349, and Peter DiLeone, an arbitrator appointed by the Federal Mediation and Conciliation Service, who ruled that plaintiff's discharge from employment from Aro was for sufficient and just cause. Jurisdiction of the case is allegedly based on the National Labor Relations Act, the Labor Management Reporting and Disclosure Act, and upon diversity of citizenship. A motion by the arbitrator to dismiss pursuant to Rule 12(b) (6) for failure to state a claim upon which relief can be granted was sustained. Hill v. Aro Corp., 263 F.Supp. 324 (N.D.Ohio 1967).

During his employment at the Aro Corporation, plaintiff occupied the position of committeeman in his Union, a position which carried certain negotiating responsibilities. In late 1964, the Union voted to attempt to renegotiate the collective bargaining agreement to require all committeemen to work the day shift. Since plaintiff had always worked nights, and was unwilling to work the day shift, he was removed from his position in the Union. On March 8, 1965, apparently after much disagreement with the Union, and to a limited extent, the company, concerning plaintiff's removal from office, Aro discharged plaintiff from his employment. The letter of discharge stated that plaintiff was a "chronic troublemaker" and that his work lacked both "quantity and quality." A grievance was immediately filed on behalf of plaintiff challenging the discharge. Also, plaintiff filed charges with the National Labor Relations Board on two occasions against both the Company and the Union. These charges were dismissed after investigation by the Board, except that one with regard to the Union, was dismissed voluntarily by plaintiff.

The grievance was processed through the first three steps of the contract grievance procedure but the parties failed to agree upon an amicable settlement. Certain representatives of the Union and the company then agreed upon an arbitrator and the matter was submitted to him for decision. Sometime prior to the arbitration hearing plaintiff retained private counsel to represent him therein, and the Union announced that it would be present at the hearing only to see that the contract provisions were not altered. It is not clear from the affidavits, inter-

rogatories, and depositions whether the attorney was hired as a result of the Union's refusal to represent plaintiff but the plaintiff so alleges in his complaint.

There are several alleged defects in the manner of selection of the arbitrator and the conduct of the hearing, which will be discussed in a later part of this opinion. The arbitrator issued his award on September 21, 1965, holding that the discharge was for sufficient and just cause. A motion was filed with the arbitrator on March 28, 1966 for reconsideration which was denied. Neither the plaintiff nor the Union attempted any appeals or attempted to have the award vacated until the filing of this case on September 19, 1966. On October 4, 1965 the International President of the Union ruled that plaintiff should be reinstated as a committeeman, but plaintiff claims this was never accomplished.

Plaintiff's complaint contains five "counts". Count I seeks to vacate the arbitration award. Count II seeks damages and injunctive relief against the Union for a breach of its duty of fair representation in the grievance procedure and arbitration. Count III alleges that the Union and the company conspired to prevent him from continuing his employment and from being reinstated to his position as committeeman. Count IV seeks damages and injunctive relief against the company and Union for conspiring to have him removed from his office in the Union. Count V seeks a mandatory injunction directing defendants not to destroy any evidence or threaten witnesses, with regard to any of the matters alleged in the first four counts.

The company has filed a motion to dismiss with respect to the first count, and a motion for a summary judgment with regard to the last four, or in the alternative, a motion to dismiss. The Union has also moved to dismiss the complaint, while plaintiff has moved for summary judgment against both defendants. The rulings on these motions have been delayed considerably so that all the depositions which were taken could be filed and

examined with regard to the motions for summary judgment. Each of the motions will be considered separately.

### Company's Motion

Pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, the company has moved to dismiss the first cause of action in the complaint for failure to state a claim upon which relief can be granted. This cause of action seeks to have the arbitration award vacated. Several grounds are stated by plaintiff which he contends entitle him to this relief. Among them are that the arbitrator considered evidence which should not have been considered, refused to consider part of plaintiff's evidence, engaged in ex parte communications with the company and the union, and failed to make an official transcript of the proceedings available to plaintiff. Also, plaintiff alleges that the selection of the arbitrator was controlled completely by the company and the union without consultation with plaintiff and that they agreed to compensate the arbitrator $150.00 per day, contrary to the submission.

At the outset it should be noted that this Court cannot review the merits of the arbitrator's decision. Federal law is clear that the determinations of arbitrators are final and binding labor cases. General Drivers, Local 89 v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The parties to the labor contract bargained for the construction of the arbitrator and not that of the courts.

However, it is established that an arbitrator's award may be vacated when there is a defect in the proceeding which goes to the jurisdiction of the arbitrator. The federal arbitration statute and the vast majority of state arbitration statutes contain a provision permitting a court to declare an award void under certain circumstances. See Comment, 27

Ohio St.L.J. 692, 712 (1966). The Ohio Statute is similar to the United States Arbitration Act with regard to the grounds for vacating an arbitration award.[1] Furthermore, both statutes provide that an application for an order confirming the award may be filed within one year after the award is made,[2] but that a motion to vacate the award must be served on the adverse party or his attorney within three months after the award.[3]

Both the company and the union argue that the arbitration acts are applicable in suits under Section 301 of the Labor Management Relations Act,[4] and that the three month limitation in both acts prevents this Court from granting relief in this case. The question is therefore whether either the state arbitration act or the federal act applies to the facts of this case.

█ The United States Supreme Court in Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) held that Section 301 authorized the federal courts to fashion a body of federal law for the enforcement of collective bargaining agreements. The Court held that as a matter of federal labor policy, the courts will enforce an agreement to arbitrate but did not say whether the United States Arbitration Act was applicable in labor cases. The Court's holding required state and federal courts to apply federal law in suits brought to enforce a collective bargaining agreement. This "federal law" may be derived from the Labor Management Relations Act itself, or from state laws or other federal acts. Id. at 456–457, 77 S.Ct. 912.

Several federal cases, both prior to the *Lincoln Mills* decision and subsequent thereto, have held certain sections of the federal arbitration act applicable to labor disputes. Rhine v. Union Carbide Corp., 343 F.2d 12, 16 (6th Cir. 1965); Local 149, American Fed'n of Technical Eng'r v. General Electric Co., 250 F.2d 922 (1st Cir., 1957); Hoover Motor Exp. Co. v. Teamsters Local 327, 217 F.2d 49 (6th Cir. 1954); Metal Products Local 1645 v. Torrington Co., 242 F.Supp. 813 (D.Conn.1965). In the *Metal Products* case the court specifically held that the three month limitation of the United States Arbitration Act was applicable in Section 301 cases rather than the shorter Connecticut statute.

█ Plaintiff contends that the state statute rather than the federal act applies, but that because certain procedural requirements of the Ohio act were not followed, the award is a nullity. Therefore, plaintiff argues that the three month limitation is inapplicable. This argument is essentially that the parties did not specify in the agreement the county in which the arbitration shall be held as the act required. Rather than examining the merits of this contention under state law, it is sufficient to say that to the extent that state statutes are applicable in labor cases, they must be compatible with the purposes of Section 301. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). It is the policy of national labor legislation to promote the

---

1. 9 U.S.C. § 10 (1964); Ohio Rev.Code Ann. § 2711.10 (Page 1953).

 Among the grounds for vacation in both statutes are the following:
 (1) Where the award was procured by corruption, fraud, or undue means,
 (2) Where there was evident partiality or corruption in the arbitration,
 (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon good cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which

the rights of any party have been prejudiced, and
 (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

2. 9 U.S.C. § 9 (1964); Ohio Rev.Code Ann. § 2711.09 (Page 1953).

3. 9 U.S.C. § 12 (1964); Ohio Rev.Code Ann. § 2711.13 (Page 1953).

4. 29 U.S.C. § 185(a) (1964).

arbitral process and to give the decisions of arbitrators finality. Certainly federal courts cannot vacate an award which was rendered one year before the commencement of the suit simply because the agreement did not specify the county where the arbitration was to occur.

It is unnecessary in this case to decide whether, in the abstract, a state arbitration act or the federal act applies to labor cases. Both the Ohio and federal acts provide that a motion to vacate the award must be served on the adverse party within three months. Both provisions are consistent with the policy of national labor law. Under federal labor law, the award was reviewable only to the limited extent provided for in the Ohio and federal arbitration acts. But even that limited review has now been lost by the failure to act within the time limitation. The first cause of action therefore does not state a claim upon which relief can be granted and the company's motion to dismiss it will be granted.

The company has also moved the Court to dismiss the second through fifth counts on the grounds that there is no jurisdiction over the subject matter and that no actionable claim for relief has been stated. In the alternative the company moved for a summary judgment on the ground that there is no material issue of fact and that it is entitled to a judgment as a matter of law. Since this Court has considered the depositions, requests for admission and interrogatories, the motion will be treated as a motion for summary judgment.

The second cause of action is directed against the union for an alleged breach of its duty of fair representation. This count has nothing to do with the company and will therefore be discussed at a later point in this opinion. The third and fourth causes of action seek damages from both the company and the union as well as injunctive relief. It is alleged that the company and the union conspired to prevent plaintiff from continuing his employment, and that he was denied certain rights accorded to him by the Labor Management Reporting and Disclosure Act. 29 U.S.C. § 401 et seq. (1964). The complaint also alleges that the action arises under Sections 7 and 8 of the National Labor Relations Act[5] and Section 301.[6]

With respect to the company, it is obvious that this Court has no jurisdiction over the claims of plaintiff. The applicable jurisdictional statute is the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 412. It provides that "[a]ny person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." Among the rights secured are those included in the "Bill of Rights of Members of Labor Organizations," 29 U.S.C. § 411 and those found in 29 U.S.C. § 529. However, the Act gives no rights to union members as employees. It does not confer any rights involving the employment relationship between management and its employees. Furthermore, even where it is alleged that management conspired with the union to violate the rights protected by the Act, the cases have held that there is no jurisdiction as against the company. Thompson v. New York Cent. R. R., 361 F.2d 137 (2d Cir. 1966); Fogg v. Randolph, 244 F.Supp. 885, 888 (S.D. N.Y.1962); Rinker v. Local 24, Amalgamated Lithographers, 201 F.Supp. 204, 206 (W.D.Pa.1962) appeal dismissed 313 F.2d 956 (3d Cir. 1963). The Act as written shows a clear intent that only the union can be sued. This Court therefore has no jurisdiction against the company under this Act.

Also, jurisdiction over the company cannot be founded on Section 301. This section provides that suits for violation of a labor contract may be brought in any district court having jurisdiction over the parties. However, the collective

---

5. 29 U.S.C. §§ 157, 158 (1964).

6. 29 U.S.C. § 185 (1964).

bargaining agreement sets forth a specific grievance procedure to settle any disputes concerning the interpretation, application or claim of breach or violation of the agreement. The third step of this procedure is that the dispute be referred to the business agent of the union and the company to effect an amicable settlement. If they fail to agree, the matter may then be referred to arbitration by either party. It is provided in the agreement that the "grievance procedure and arbitration provided herein shall constitute the sole and exclusive method of determination * * * of any and all grievances * * *." The law, as defined in the discussion of the first cause of action in this opinion, is that the decisions of arbitrators are final and binding. Therefore, to the extent that an alleged breach of contract has already been decided by the arbitrator, that decision is binding on this Court. Furthermore, if the present controversy is different than that which was submitted to arbitration, this Court is still lacking in jurisdiction because the contractual remedies have not yet been exhausted. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Rhine v. Union Carbide Corp., 343 F.2d 12 (6th Cir. 1965). The contract specifically says in paragraph 4.9 that the "grievance procedure and arbitration" is the exclusive remedy of the parties. This Court therefore has no jurisdiction to adjudicate any claim of breach of the labor contract under Section 301.

Moreover, Sections 7 and 8 of the National Labor Relations Act do not confer jurisdiction on the district courts. These sections deal with unfair labor practices which are generally within the exclusive jurisdiction of the National Labor Relations Board. Unless the controversy falls within one of several exceptions, (such as that it constitutes a breach of a labor contract under Section 301) jurisdiction is pre-empted by the Board. Vaca v. Sipes, 386 U.S. 171, 180,

87 S.Ct. 903, 17 L.Ed.2d 842 (1967). It therefore appears that there is no actionable claim against the company.

Count five seeks injunctive relief ordering defendants not to destroy evidence or threaten or coerce witnesses with regard to the trial of this case. This cause of action is ancillary to the first four counts and as such, falls with the first four counts. Since there is no federal claim against the company, and the Court's attention has not been directed to any state claims, the company will be dismissed as a defendant in this action.

### Union's Motion

The union has moved to dismiss the complaint as against it pursuant to Rule 12(b) (6) for failure to state a claim upon which relief can be granted. The first cause of action seeking to have the arbitration award vacated will be dismissed for the same reasons stated in this opinion with regard to the company's motion. Furthermore, counts three, four and five do not state causes of action under Sections 7 and 8 of the National Labor Relations Act nor under Section 301. The arbitrator's decision is binding on this Court regarding any alleged breach of contract. To the extent that these counts rely *solely* upon unfair labor practices and not upon a breach of contract, jurisdiction is pre-empted by the National Labor Relations Board.

Count four is said by the plaintiff to be based on the Labor-Management Reporting and Disclosure Act of 1959, as amended. The basic section in this Act is Section 101[7] which sets forth certain rights of union members including freedom of speech and assembly and equal rights with other members. Section 101 (a) (5) states that a union member shall not be disciplined except after being served with charges setting forth the nature of the union offense, being given time to prepare a defense to such charges, and being afforded a full and fair hearing. Section 102[8] provides that any person whose rights secured by Section 101 have been infringed may bring a civil

---

7. 29 U.S.C. § 411 (1964).

8. 29 U.S.C. § 412 (1964).

action in a district court of the United States for such relief (including injunctions) as may be appropriate.

Plaintiff alleges that the union attempted to remove him from his post as committeeman by illegal means. Among the means which the union is said to have employed was to require all committeemen to work on the day shift although plaintiff worked nights, suspending plaintiff from said post, and allowing its president to "suspend certain membership privileges" without written charges or giving him a reasonable time to prepare a defense or giving him a full and fair hearing, and by denying him "the full rights of a bona fide paid membership." It is also alleged that although the International President of the union ordered that plaintiff be restored to his position as a committeeman, he has not been "restored to the office of committeeman and is not now allowed a voice in said defendant union's meetings."

 These allegations do not state a cause of action under the Act. It appears that the only ground relied upon is that plaintiff was illegally removed from his office. Although the complaint says that plaintiff is not allowed a voice in union meetings, it seems that this is not meant as a denial of rights of speech or assembly, but merely a means which plaintiff believes that the union employed to remove him from office. Section 101 applies only to a union member's membership status and does not apply to his status as an officer or employee of the union. It has been repeatedly held that Congress did not intend for Section 101 to preclude summary removal of a member from union office. Grand Lodge of the Int'l Ass'n of Machinists v. King, 335 F.2d 340 (9th Cir. 1964); Airline Stewards Local 550 v. Transport Workers Union, 334 F.2d 805 (7th Cir. 1964); Sheridan v. United Brotherhood of Carpenters

Local 626, 306 F.2d 152 (3d Cir. 1962). This Court has examined the legislative history of this Act and agrees with this conclusion.[9]

 However, Section 609 of the Act makes it unlawful for a union "to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act," and further provides that an action may be brought under Section 102 to enforce the prohibitions of Section 609.[10] In Grand Lodge of Int'l Ass'n of Machinists v. King, supra, the Court held that the words "otherwise discipline" includes removal from union office under Section 609. Thus, where an officer is removed because he has exercised or sought to exercise any rights secured to him by Section 101, the King case would require a holding that a cause of action exists. Assuming this to be a correct construction of the statute, this Court nevertheless believes that no cause of action has been stated under Section 609. This section only applies if the member was removed for exercising a right to which he is entitled under the Act. Plaintiff alleges in Count IV that the proceedings against him by the union were illegal but there is no allegation that he was disciplined for exercising the rights guaranteed him by the Act. It is true that on motions to dismiss, the Court will take as admitted all well pleaded allegations in the complaint together with all reasonable inferences therefrom. However, from a reading of the complaint there is no basis for an inference that the action taken by the union was as a result of plaintiff's exercise of any of his rights under the Labor-Management Reporting and Disclosure Act. Furthermore, this Court has spent many hours examining the numerous despositions, affidavits and interrogatories in connection with the other motions for summary judgment, and has

---

9. The Conference Report on the Act states that "it should be noted that the prohibition on suspension without observing certain safeguards applies only to suspension of membership in the Union; it does not refer to suspension of a

member's status as an officer of the union." Conference Rep. No. 1147, 86th Cong. 1st Sess. (1959), U.S.Code Cong. & Admin.News 1959, p. 2504.

10. 29 U.S.C. § 529 (1964).

found no such claim being made therein. The complaint does not state a claim upon which relief can be granted under the Reporting and Disclosure Act, nor does it state a state cause of action.

■ The only remaining question with respect to the union's motion concerns count two of the complaint. This cause seeks damages and certain injunctive relief as a result of the breach by the union of its duty to fairly represent the plaintiff at the arbitration hearing, or to bargain with the company to secure the reinstatement of plaintiff as an employee of the company. The concept of fair representation is not particularly a new subject to the commentators or to the courts. However, this case presents problems which have not previously been considered and which deserve close attention. In brief, the statutory duty deals with the obligation of a union to represent all the employees fairly in bargaining, and also in the contract grievance procedure. See Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). In Vaca v. Sipes, a union member alleged that he had been discharged from his employment at Swift and Company in violation of the collective bargaining agreement. The basis of his discharge by the company was that he was medically unfit to work. The union processed his grievance through the fourth step of the grievance procedure but the company persisted in its refusal to reinstate him. Thereafter, the union sent plaintiff to a doctor at its own expense in an attempt to amass medical evidence to establish plaintiff's fitness for work. After an unfavorable report, the union determined that arbitration would be fruitless and refused to take the case to an arbitrator. The state trial judge overruled the union's motions for directed verdict and the jury returned a verdict for plaintiff. The Supreme Court reversed the decision of the State Supreme Court which had affirmed the trial court. The court reaffirmed that the duty of fair representation applied to the grievance procedure, and held that even though an action based on the union's alleged breach of its duty of fair representation concerns conduct which is arguably an unfair labor practice as defined by Section 8 of the National Labor Relations Act, jurisdiction of the courts is not pre-empted by the Board. However, the court ruled that the plaintiff failed to prove that the union breached its duty of fair representation in its handling of the grievance, and further that the Supreme Court of Missouri erred in upholding the verdict solely on the ground that the evidence supported the claim of wrongful discharge from employment. Thus the fact that the grievance may have been justified is not sufficient to prove that the union failed to represent an employee fairly by refusing to take the case to arbitration. It must be shown that the union acted in bad faith, or was arbitrary or discriminatory. A union may, according to Vaca v. Sipes, refuse to take a case to arbitration if it does so in good faith after an attempt to discover the facts regarding the grievance.

■ This case is distinguishable factually from *Vaca* in that here the grievance was actually taken to arbitration. The complaint states that the company and the union arranged for the arbitrator to hear the case, and furthermore that plaintiff was given no voice in said selection. According to the contract grievance procedure, if the business agent of the union and the company fail to effect an amicable settlement of the grievance, the matter may be referred to arbitration by either party. It is provided that the grievance procedure and arbitration set forth in the agreement "shall constitute the sole and exclusive method of determination" of all grievances. Thus, the obvious question is whether a court may entertain a complaint for failure of the union to adequately represent plaintiff in an arbitration proceeding, when the arbitration award is itself final and binding. To the extent that the award was reviewable by the courts, that review is now precluded by the failure to seek an order vacating the award within three months. It will be the holding of this Court that the award itself

may not be vacated and the plaintiff may not seek reinstatement as an employee of Aro Corporation. However, he may, if he can prove that the union was arbitrary, discriminatory or acting in bad faith in its representation of plaintiff in the grievance procedure and that some damage flowed from the breach, recover his damages.

■ It is contended that as a matter of law, plaintiff has not stated a cause of action under *Vaca*. The complaint alleges that the union refused to represent plaintiff, and that as a result, he was forced to hire private counsel, and that the union did not cooperate with plaintiff's attorney, and that at the hearing, the union failed to produce evidence within its care, custody and control which would have supported the grievance. This allegation appears to be a charge that the union was more than merely neutral in the arbitration hearing but was actually hostile to plaintiff's position. As this Court views the law, proof that the union actually worked against plaintiff at the arbitration hearing would be sufficient proof of bad faith under Vaca v. Sipes.[11]

The Court is fully cognizant of the extreme difficulty it will confront on the damage question and that it may be necessary to determine the validity of the grievance on the merits in order to assess damages, but this is necessitated by the Court's reading of the Supreme Court decision in *Vaca*.

For the above reasons, the union's motion will be sustained as to the first, third and fourth counts of the complaint, and said counts will be dismissed. The mo-

tion will be overruled as to the second count. Since there has been no real argument concerning the motion to dismiss count five of the complaint, it will be overruled at this time without prejudice to the right of the union to renew its motion at a later date.

### *Plaintiff's Motion*

■ Plaintiff has also moved for a summary judgment. Because of the rulings of this Court on the defendants' motions, the only ground upon which plaintiff may recover is that the union breached its statutory duty of fair representation of plaintiff in the grievance proceedings. There are material fact questions with regard to this cause of action and plaintiff's motion will therefore be overruled.

One fact question will be whether or not the union refused to represent plaintiff at the arbitration hearing. Plaintiff alleges in his complaint that he was forced to hire private counsel because of the union's failure to represent him. The depositions of several union officials controvert this statement indicating that plaintiff was refusing the representation of the union.

Secondly, the plaintiff alleges that the union was hostile to plaintiff and that it was present merely to see that the contract was not altered in the arbitration. Furthermore, the complaint alleges that the union had evidence in its custody which would have supported plaintiff's grievance, which was not produced. However, the depositions of union officials show that the union representatives met with Hill and his attorney several

11. It is contended that the N.L.R.B. has specifically determined the charges now advanced by plaintiff, and that the factual findings made therein are determinative of the controversies involved in this suit. It is true that the regional director refused to issue a complaint with regard to the failure of the union to fairly represent plaintiff. However, this Court does not feel bound by any factual determinations made by the director. Although the filing party is normally required to produce evidence and witnesses in support of his charge, the

determination of the director as to whether or not to cause a formal complaint to issue with the Board is not a formal proceeding. In fact such a determination is not even treated as final within the Board. A complaint may be issued even though there has been a prior refusal to issue it by the director. NLRB v. Baltimore Transit Co., 140 F. 2d 51 (4th Cir. 1944); Taylor Forge and Pipe Works, 113 N.L.R.B. 693, 706 (1955); Textile Machine Works, Inc., 96 N.L.R.B. 1333, 1334 n. 1 (1951).

times and attempted to cooperate with them. The main factual question will be whether the union was acting in bad faith. This Court does not feel that it can grant a summary judgment to either party with regard to this question, on the present state of the record.

Plaintiff may submit an order in accordance with this opinion within ten days and serve copies on defendants. If defendants do not agree with plaintiff's form of order, they may submit their own form of order within ten days after receipt of plaintiff's order.