**Herman H. JUSTICE**

v.

**UNION CARBIDE CORPORATION.**
Civ. No. 3–75–208.

United States District Court,
E. D. Tennessee, N. D.
Nov. 26, 1975.

---

Joyce, Anderson, Wood & Meredith, Oak Ridge, Tenn., for plaintiff.

G. Wilson Horde, E. C. McFaddin, Union Carbide Corp., Oak Ridge, Tenn., E. H. Rayson, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff brought this action against his former employer seeking certain pension benefits under a collective bargaining agreement between the employer and plaintiff's former Union, the Atomic Trades and Labor Council, AFL–CIO. The suit was originally filed in state court but was removed to this Court on the ground that the action arose under the provisions of Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). Plaintiff's motion to remand was denied and the

case was tried to the Court without a jury. The following findings of fact and conclusions of law are entered pursuant to Rule 52(a), F.R.C.P.

Plaintiff was employed by defendant in its Oak Ridge, Tennessee, Y–12 Plant as a machinist from November 10, 1958, until January 5, 1973, or for a total of fourteen years and two months. As a machinist, plaintiff's employment was governed by successive collective bargaining agreements between defendant and plaintiff's former union, including the three-year agreement effective June 22, 1972, which was in effect at the time plaintiff's employment was terminated for medical reasons on January 5, 1973. Part A, Exhibit 1. The pension plan under the collective bargaining agreement was modified June 7, 1973, effective retroactively to January 1, 1973, and plaintiff claims that he is eligible for benefits under this modified pension plan. Parts B, C, Exhibit 1.

Under the pension plan in effect prior to the modification, plaintiff would have been required to complete fifteen years of company service in order to qualify for benefits; however, the modified plan reduced the required company service time to ten years for employees who retired after December 31, 1972, and whose disability commenced after June 30, 1972. The material language of the pension plan, as amended, provides:

"An employee within the coverage of this Plan, who before age 65, is totally and permanently disabled and, retires after December 31, 1972 as a result of such disablement, with 10 years or more of Company Service Credit if the disability commenced after June 30, 1972 . . . shall be entitled to a Disability Benefit under this Plan . . ." Part C, Exhibit 1, p. 8.

It was not disputed at trial that plaintiff is totally and permanently disabled. The only dispute about plaintiff's eligibility under the pension plan centered around the date that plaintiff became disabled.

The following two issues, the first legal and the second factual, are central to the resolution of this case:

(1) Whether the Court lacks jurisdiction because plaintiff did not exhaust the grievance and arbitration procedures in the collective bargaining agreement, and

(2) Whether plaintiff's disability commenced before or after June 30, 1973.

### Failure to Exhaust Contract Remedies

Defendant contends that plaintiff has failed to utilize the grievance and arbitration procedures established by the collective bargaining agreement[1] and that the Court is, therefore, without jurisdiction to hear this case. In support of this contention defendant relies primarily on the cases of *Republic Steel Corporation v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1964); *Smith v. Union Carbide Corp.,* 350 F.2d 258 (6th Cir. 1965); *Rhine v. Union Carbide Corp.,* 343 F.2d 12 (6th Cir. 1965).

The recent case of *Hazen v. Western Union Telegraph Co.,* 518 F.2d 766 (6th Cir. 1975), indicates that a retired person, no longer a member of the collective bargaining unit, has the option of suing at common law under established contract principles or pursuing a federal remedy for breach of contract under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. 518 F.2d at 769–70. *See also Chemical Workers v. Pittsburgh Glass,* 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). It appears from the record that diversity of citizenship exists between these parties and that the jurisdictional amount requirement has been met. 28 U.S.C. § 1332.

Even if the case were treated as one arising under Section 301, the Court is

1. The grievance and arbitration procedures are set out in Articles III and IV, respectively, of the collective bargaining agreement. Part A, Exhibit 1.

of the opinion that plaintiff was excused from exhausting his contractual remedies. Plaintiff testified that within 10 or 15 days after his termination on January 5, 1973, he discussed the matter of pension benefits with the business agent of the Union and did so several times thereafter but no action was taken. When the pension plan was modified in June 1973 so as to include certain persons with only 10 years of service, plaintiff contacted defendant's personnel office by phone. Plaintiff testified that Mr. Cantrell, an employee of defendant, talked to him "like a dog" and told him that he would get no more benefits from the company. Shortly thereafter, plaintiff informed a representative of his Union about the company's position on the matter but no action was taken on his behalf by the Union.

At the pretrial conference, the Court asked counsel for both parties if they knew whether the Union would process plaintiff's claim. Mr. J. A. George, an employee of defendant, subsequently contacted the Union and was told that the Union would not process the claim. One of the reasons given by the Union was that plaintiff was no longer an employee of the defendant.[2] The Union has never pursued the matter on plaintiff's behalf.

Under these circumstances, plaintiff was excused from exhausting his contractual remedies prior to filing suit, if indeed, he was required to do so. The proof shows that it appeared to plaintiff that further efforts to convince the Union to pursue his claim would be futile. Furthermore, the Union was not interested in filing the claim, partly for the reason that plaintiff was no longer employed by the defendant. *See Glover v. St. Louis, San Francisco R. R. Co.,* 393 U.S. 324, 329–31, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Hazen v. Western Union Telegraph Co.,*

*supra; Waters v. Wisconsin Steel Works,* 427 F.2d 476, 489 (7th Cir. 1970).

### The Merits

Defendant conceded at the time of trial that if plaintiff had worked until July 1, 1972, he would have been entitled to the pension benefits he seeks in this action. Plaintiff left work on June 15, 1972, on advice of his doctor, and did not return thereafter. Thus, by defendant's concession, plaintiff lacked only 15 days on the job before he would have been unquestionably entitled to a pension under the contract.

Plaintiff spent a great deal of time at trial showing that his physician, Dr. George T. Novinger, did not conclude that plaintiff was totally and permanently disabled until on or about July 25, 1972. This fact is entitled to consideration, but we consider the determination of the date of the onset of the disability as controlling here and not necessarily the date of the medical evaluation of that condition.

Certain claim forms were submitted by plaintiff's attending physicians after he left work on June 15th. Part E, Exhibit 1. The forms dated June 22, July 7, July 20 and August 28, 1972, state that plaintiff "has been continuously disabled (unable to work)" from June 15 or 16, 1972, but they also state that whether plaintiff will return to work is "indefinite" or "unknown." This evidence indicates that at the time these forms were completed the attending physicians were not convinced that the plaintiff was permanently disabled, although he might have been unable to work for some indefinite time.

On December 21, 1972, plaintiff made application for total and permanent disability benefits under a Metropolitan Group Life Insurance Company policy. Part E, Exhibit 1. In the claim form plaintiff represented that he was "first

---

2. The other reasons given were that (1) the issue had been adversely decided in a prior arbitration decision, and (2) as of the time of the Union's discussions with plaintiff, the time limits for the presentation of a grievance had run.

totally disabled by this sickness or injury so that [he was] wholly unable to work" on June 15, 1972. In connection with that application, Dr. Novinger filled out an "Attending Physician's Statement of Disability" which indicated that as of the date of the report (November 15, 1972), plaintiff would never be able to resume any work. This evidence also indicates that plaintiff was unable to work after June 15, 1972, but it does not necessarily indicate that he was permanently disabled on or before June 30, 1972.

■ Plaintiff made application for disability benefits under the Social Security Act on August 18, 1972, and was awarded benefits as of August of that year. Part F, Exhibit 1. In his Social Security Application, plaintiff represented that he became unable to work because of his disability on January 31, 1972, "except for 17 day unsuccessful work attempt in 5/72–6/72." Plaintiff explained at trial that the Social Security authorities agreed to "back up" his date of disability to January 31, 1972, in order to entitle him to benefits as soon as possible.[3] Thus, plaintiff satisfactorily explained why the Social Security Administration determined that his disability commenced on January 31st. As indicated below, plaintiff did return to work in May and June 1972 with the approval of the defendant's doctor or doctors. We, therefore, do not think that the date of disability determined by the Social Security Administration is controlling here.

The evidence at trial showed that plaintiff suffered a heart attack on January 31, 1972, was hospitalized, and did not work until the latter part of May of that year. He was only allowed to return to work after his own physician and a doctor or doctors at the company's dispensary had given him permission to do so. On June 10 plaintiff went to Dr. Novinger complaining of severe coldness, cramps and numbness in his legs and feet. Initially, Dr. Novinger felt that plaintiff was suffering from a circulatory problem in his legs plus some heart and back problems. Plaintiff was referred to a vascular surgeon and an orthopedic specialist for consultation. Dr. Novinger advised plaintiff not to work during the time the tests were run, and plaintiff left work on the 15th.

After Dr. Novinger received the reports from these specialists and also the report of a heart specialist dated June 20, 1972, he summarized his conclusions in a letter dated July 25, 1972. Exhibit 2. The substance of his findings was that plaintiff was totally and permanently disabled "in view of his cardiac history, his circulatory disease, his arthritic history and his general situation . . ." *Id.*

Doctor Novinger informed plaintiff of his conclusions on July 27, 1972, and plaintiff testified that they were a "slap in the face" to him because he had considered himself as just being away from work on sick leave and because he had expected to return to work.

Portions of Dr. Novinger's discovery deposition were read during the course of the trial and the following statements made by him are material to the date of onset of plaintiff's disability:

"Q. Alright, then as of between the dates of June 15th and July 25th [1972], when you wrote this letter, I believe, which has been introduced as an Exhibit, was he or was not he not (sic) declared to be disabled during that period of time?

"A. Yes, in my opinion he was disabled, but not 100 percent. I thought he was sick enough to be off work but I did not come to a conclusion as to his total disability.

      *     *     *     *     *     *

"Q. Alright, could he have been working and going through [the medical tests prescribed by the witness] at the same time?

3. Title 42 U.S.C. § 423 requires a prior condition of disability for six months.

"A.   He could have, it was my opinion that I thought he should stay off, I was a little worried about his general condition, but if you put it directly, yes, he could have been working."

Based on the foregoing and all the other relevant evidence of record, the Court concludes that plaintiff has shown by a preponderance of the evidence that his total and permanent disability commenced at some time after June 30, 1972. Accordingly, plaintiff is entitled to the disability pension benefits he seeks in this action.

Counsel will present an order in conformity with this Memorandum.