No. 94,380

MBNA AMERICA BANK, N.A., *Appellant*, v. LORETTA K. CREDIT, *Appellee.*

(132 P.3d 898)

Opinion filed April 28, 2006.

*David J. Weimer,* of Kramer & Frank, P.C., of Kansas City, Missouri, argued the cause, and *Jason J. Lundt,* of the same firm, was with him on the briefs for appellant.

*Loretta K. Credit,* appellee, argued the cause and was on the brief pro se.

The opinion of the court was delivered by

BEIER, J.: This appeal arises out of a district court's decision vacating an arbitration award and its ruling that no arbitration agreement existed between plaintiff MBNA America Bank (MBNA) and defendant Loretta K. Credit.

MBNA submitted a dispute regarding what it alleged to be defendant Credit's credit card debt in excess of $21,000 to arbitration.

Credit's participation in the arbitration was limited to sending a letter to the arbitrator, objecting to the proceeding because she believed there was no agreement to arbitrate. There is no copy of this letter in the record on appeal or any information about how, if at all, Credit's objection was considered in the arbitration.

The record does reflect that, on September 7, 2004, an arbitration award in the amount of $21,094.74 was entered in favor of MBNA. The award, which states "the Parties entered into an agreement providing that this matter shall be resolved through binding arbitration," was signed by arbitrator Henry Cox and by Harold Kalina, Director of Arbitration for the National Arbitration Forum in Minneapolis, Minnesota. The fact that the same date appears on the document near each signature, when Cox and Kalina would have been in two states distant from one another is unexplained.

The award also contains the following language above the signature of Kalina:

**"ACKNOWLEDGMENT AND CERTIFICATE OF SERVICE**

This Award was duly entered and the Forum hereby certifies that a copy of this Award was sent by first class mail postage prepaid to the parties at the above referenced addresses on this date."

Other than this language, there is nothing in the record on appeal tending to show that Credit received a copy of the award or, if so, when. Credit acknowledged at oral argument before this court, however, that the address set forth for her on the award was correct at that time. She said she did not know whether she ever received a copy.

Under the Federal Arbitration Act, Credit would have had 3 months after the award was "filed or delivered" in which to challenge it. 9 U.S.C. § 12 (2000). The federal act is silent on the proper methods for filing or delivery of the award. The Kansas version of the Uniform Arbitration Act is somewhat more specific. "The arbitrators shall deliver" a copy of the award "to each party personally or by registered mail, or as provided in the agreement." K.S.A. 5-408(a). Any application to the court to vacate an award "shall be made within ninety (90) days after delivery of a copy of the award to the applicant." K.S.A. 5-412(b).

It is undisputed that Credit did nothing to respond to the award at issue in this case until MBNA filed a motion to confirm it in late December 2004 in the district court in Butler County. When notified of MBNA's motion to confirm, Credit filed several pro se pleadings, which, MBNA concedes, may be read together to constitute a motion to vacate the award. In these pleadings, Credit again asserted that there was no arbitration agreement between her and MBNA. In an affidavit filed with the district court, she specifically said that MBNA had not provided her with a copy of the alleged agreement. MBNA had not attached a copy of any agreement to its motion to confirm the award, although the Federal Arbitration Act requires a copy to be attached. No copy of any agreement appears anywhere else in the record on appeal.

Approximately 6 weeks after Credit filed her responsive pleadings, and a day after the district court judge resolved a discovery dispute in her favor, he vacated the arbitration award, ruling that "there is no existing agreement between the parties to arbitrate and therefore the award entered against Defendant is null and void."

On this appeal, MBNA advances various arguments on what it characterizes as three issues. We discern but one controlling question: Did Credit's effort to thwart confirmation of the award come too late? If so, the district court did not have authority to vacate the award. If not, the district court had the authority it needed to enter its rulings.

Before addressing this issue, we note that MBNA takes the position that the Federal Arbitration Act, see 9 U.S.C. § 1 *et seq.* (2000), is controlling. It nevertheless invokes the Kansas Uniform Arbitration Act, see K.S.A. 5-401 *et seq.*, and Kansas cases. MBNA also acknowledges that Kansas procedure governs as long as it is not in conflict with substantive federal law. See U.S. Const. art. 6, cl. 2; *Southland Corp. v. Keating*, 465 U.S. 1, 79 L. Ed. 2d 1, 104 S. Ct. 852 (1984). We have therefore evaluated both federal and state law as well National Arbitration Forum rules when relevant to our resolution of this case.

The record before us is extremely sparse. MBNA's argument on the timeliness of Credit's motion to vacate the award is doomed

both by what it fails to contain and what it does contain. An appellant must designate a record on appeal regarding an arbitration award that is adequate to substantiate contentions made to the reviewing court. K.S.A. 5-401 *et seq.*, 5-412(a), 5-418(a)(3), (b); *Rural Water Dist. No. 6 v. Ziegler Corp.*, 9 Kan. App. 2d 305, Syl. ¶ 4, 677 P.2d 573, *rev. denied* 235 Kan. 1042 (1984); see also *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 777, 27 P.3d 1 (2001). Without an adequate record, any claim of alleged error fails. *In re B.M.B.*, 264 Kan. 417, 435, 955 P.2d 1302 (1998).

We note first that MBNA cannot rely on Credit's tardiness in challenging the award if the arbitrator never had jurisdiction to arbitrate and enter an award. An agreement to arbitrate bestows such jurisdiction. When the existence of the agreement is challenged, the issue must be settled by a court before the arbitrator may proceed. See 9 U.S.C. § 4; K.S.A. 5-402.

All we have in the record is Credit's assertion that she sent an apparently timely objection to the arbitrator, contesting the existence of an agreement to arbitrate. Although no copy of this objection is in the record, MBNA's counsel admitted at oral argument before this court that his client "probably" has a copy of the objection; thus we look to MBNA as the appellant to demonstrate that the objection was somehow ineffective to trigger its responsibility to seek court intervention to compel arbitration. See 9 U.S.C. § 4; K.S.A. 5-402. In the absence of such a demonstration, we, like the district court, have no choice but to accept Credit's version of events.

Under both federal and state law, Credit's objection to the arbitrator meant the responsibility fell to MBNA to litigate the issue of the agreement's existence. See 9 U.S.C. § 4; K.S.A. 5-402. Neither MBNA, as the party asserting existence of an arbitration agreement, nor the arbitrator was simply free to go forward with the arbitration as though Credit had not challenged the existence of an agreement to do so.

"If there is a challenge to the arbitration, it is for the courts, not the arbitrator, to decide whether the agreement to arbitrate exists and whether the issue in dispute falls within the agreement to arbitrate.

. . . .

"Under either the Federal Act or the Kansas Act, the arbitrator's power to resolve the dispute must find its source in the agreement between the parties. The arbitrator has no independent source of jurisdiction apart from consent of the parties. Dreyer, *Arbitration Under the Kansas Arbitration Act: The Role of the Courts*, 59 J.K.B.A. 33, 35 (May 1990).

"Substantive arbitrability is concerned with the question of whether the parties have contractually agreed to submit a particular dispute to arbitration. The courts decide this question because no one must arbitrate a dispute unless he has so consented." 59 J.K.B.A. at 35 n.42 (quoting *Denhardt v. Trailways, Inc.*, 767 F.2d 687, 690 [10th Cir. 1985]).

The record, such as it is, also undercuts any assertion that Credit was properly served with a copy of the award. The Acknowledgment and Certificate of Service signed by Kalina states only that the award was served on September 7, 2004, by first class mail, postage prepaid. Unless the parties' agreement to arbitrate— which, again, is not in the record—provided for this method of service, it did not meet the clear requirement of K.S.A. 5-408. We are not willing, despite MBNA's urging, to apply any common law presumption of receipt of a document after first class, postage prepaid mailing when there is a statute that appears to dictate specific alternate methods for service.

The Kansas statute also requires that Credit have been served by "the arbitrators," and it is unclear exactly what Kalina's personal role in the arbitration, if any, was. See K.S.A. 5-408. He may have qualified as one of "the arbitrators," but the ambiguity of the award itself leaves room for a contrary argument.

Also, in the absence of proof in the record of proper service of a copy of the award on Credit on *any* date, it is obvious that neither the district court judge nor we could have arrived at the conclusion that proper service of the award was effected on a date more than 3 months or more than 90 days before Credit filed her first pro se pleadings to vacate the award. A copy of the award must have been properly served on Credit by that time in order for MBNA's timeliness argument to have any merit.

As mentioned above, MBNA failed to attach a copy of the arbitration agreement to its motion to confirm the award. This violated the Federal Arbitration Act for which MBNA intermittently expresses respect. See 9 U.S.C. § 13 (2000). This alone would have

justified the district court in its decision to deny MBNA's motion to confirm the award.

Should the district court have taken the additional step of vacating the award on the scanty record before it? That action was proper as well. In addition to failing to attach a copy of the agreement to arbitrate when it filed its motion to confirm, MBNA filed no response to Credit's various pleadings adding up to a motion to vacate. Its only further pleading was a motion for protective order and suggestions in support when she sought discovery. The filings on the protective order issue asserted entitlement to confirmation, but they did so primarily because of the timeliness issue, which, on this record, is without merit.

In these circumstances, K.S.A. 5-412(5) permitted Credit to file a timely motion to vacate and raise the argument that no arbitration agreement existed. MBNA made no legally sufficient response to her arguments. Approximately 6 weeks passed. The district court judge finally ruled in Credit's favor. MBNA's assertion that this ruling came without warning or adequate time for response also is without merit. We therefore conclude that the district court did not err.

Finally, we note that a panel of our Court of Appeals has reached a similar conclusion on similar facts in another case involving MBNA's efforts to arbitrate a dispute. See *MBNA America Bank v. Barben,* No. 92,085, unpublished opinion filed May 20, 2005. We also note that these Kansas cases appear to reflect a national trend in which consumers are questioning MBNA and whether arbitration agreements exist. See *e.g., MBNA America Bank, N.A. v. Boata,* 94 Conn. App. 559, 893 A.2d 479 (2006); *MBNA America Bank, N.A. v. Rogers,* 838 N.E.2d 475 (Ind. App. 2005); *MBNA America Bank, N.A. v. Hart,* 710 N.W.2d 125 (N.D. 2006); *MBNA Am. Bank, N.A. v. Terry,* 2006 WL 513952 (Ohio); *MBNA America Bank, N.A. v. Berlin,* 2005 WL 3193850 (Ohio App.); *MBNA America Bank, N.A. v. Perese,* 2006 WL 398188 (Texas App.). Given MBNA's casual approach to this litigation, we are not surprised that the trend may be growing.

Affirmed.