Kevin M. WELDON, Appellant–Defendant,

v.

ASSET ACCEPTANCE, LLC, Appellee–Plaintiff.

No. 53A01–0804–CV–159.

Court of Appeals of Indiana.

Nov. 25, 2008.

---

Kevin M. Weldon, Bloomington, IN, Appellant Pro Se.

Robert E. Stochel, Hoffman & Stochel, Crown Point, IN, Attorney for Appellee.

**OPINION**

BAKER, Chief Judge.

Appellant-defendant Kevin M. Weldon appeals the trial court's orders denying his

1. 9 U.S.C. § 1 et seq.

motion to vacate an arbitration award and for summary judgment and entering summary judgment in favor of appellee-plaintiff Asset Acceptance, LLC (Asset Acceptance). Finding that Weldon failed to file his motion to vacate within the three-month deadline set forth by the Federal Arbitration Act[1] and that under the circumstances presented herein, the trial court was required to confirm the arbitration award, we affirm.

*FACTS*

In the mid–1990s, Weldon had a credit card with MBNA America Bank, N.A. (MBNA). Weldon eventually fell behind on his credit card payments, and he admits that his last payment to MBNA occurred in November 1999. The credit card agreement provides that any disputes would be resolved by binding arbitration. Appellant's App. p. 140. At some point, Asset Acceptance became the assignee of MBNA.

In early October 2006, Asset Acceptance filed a claim with the National Arbitration Forum (NAF) for the outstanding balance on Weldon's credit card, which totaled nearly $30,000. The NAF attested that it served Weldon with notice of the arbitration via UPS, appellant's app. p. 144, though Weldon denies receiving the documents. Weldon did not respond to the first or second notices sent to him. On December 11, 2006, the arbitrator entered an award in favor of Asset Acceptance in the amount of $29,348.85. The NAF stated that it sent the judgment by regular mail to Weldon on December 12, 2006, *id.* at 145, though Weldon denies that he received it.

On May 22, 2007, Asset Acceptance filed a motion with the trial court to confirm the

arbitration award. In June 2007, Weldon received notice of the trial court proceedings. Weldon contends that June 2007 was the first time he learned of the arbitration proceedings and award that had been entered against him six months earlier. On July 5, 2007, the trial court held an initial hearing on Asset Acceptance's motion, at which time Weldon contested the validity of the arbitration award and requested some time to file responsive pleadings. The trial court granted Weldon's request.

On August 6, 2007, Weldon filed a motion to vacate the arbitration award and for summary judgment, arguing that the arbitration proceedings had been filed outside of the allegedly applicable six-year statute of limitations. On August 20, Weldon filed a second motion to vacate the arbitration award and dismiss with prejudice on separate grounds than those raised in the August 6 motion. Specifically, Weldon argued that Asset Acceptance had not established that it was a valid assignee of MBNA, that Asset Acceptance had failed to attach certain required documents to its complaint, that he had never agreed to binding arbitration, and that he was never properly served with notice of the underlying arbitration proceedings.

On August 31, 2007, Asset Acceptance responded to Weldon's August 6 motion, arguing that the relevant statute of limitations is one year and the trial court proceedings were instituted within that timeframe. It further argued that Weldon was properly served under the relevant rules and that he had waived all arguments by failing to participate in the underlying arbitration. On October 29, 2007, Asset Acceptance filed a cross-motion for summary judgment and a response to Weldon's August 20 motion, arguing that Asset Acceptance had complied with all relevant statutory conditions such that the trial court

was required to confirm the arbitration award. It further argued that Weldon had failed to offer admissible evidence in support of his argument that the arbitration award should be vacated. On December 17, 2007, the trial court summarily denied Weldon's motions and granted Asset Acceptance's cross-motion, entering summary judgment in Asset Acceptance's favor in the amount of $29,348.58 plus costs. Weldon now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning*, 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.* We may affirm the grant of summary judgment upon any basis argued by the parties and supported by the record.

*Breining v. Harkness,* 872 N.E.2d 155, 158 (Ind.Ct.App.2007), *trans. denied.*

## II. The Arbitration Award

### A. Federal Arbitration Act

Weldon argues that the trial court erroneously refused to vacate the arbitration award. To evaluate this argument, we must first determine the applicable law to be applied to the dispute.

The parties spend much of their briefs raising arguments and defenses pursuant to the Uniform Arbitration Act as adopted by Indiana. Ind.Code § 34–57–2–1 et seq. They are mistaken, however, in applying that Act, inasmuch as it does not apply to consumer loan contracts. I.C. § 34–57–2–1(b). "All consumer leases, sales, and loan contracts, as they are defined in the Uniform Consumer Credit Code are exempted from the Indiana Act. A loan includes the creation of debt pursuant to a lender credit card or similar arrangement. *See* Ind. Code § 24–4.5–3–106." *MBNA Am. Bank, N.A. v. Kay,* 888 N.E.2d 288, 290 (Ind.Ct. App.2008). Therefore, the instant action is governed by the Federal Arbitration Act (FAA). *See id.; see also Am. Gen. Fin. Mgmt. Corp. v. Watson,* 822 N.E.2d 253, 256 (Ind.Ct.App.2005) (holding that "[t]he FAA applies to written arbitration provisions contained in contracts involving interstate commerce when the parties agree to arbitrate"). In any event, we note that the agreement itself provides that it "shall be governed by the Federal Arbitration Act...." Appellant's App. p. 141.

■■■■ Turning to the relevant portions of the FAA, therefore, we note that the statute requires the trial court to confirm an arbitration award unless it is vacated, modified, or corrected:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon *the court must grant such an order* unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9 (emphasis added).[2]

Where, as here, the movant seeks to vacate the arbitration award, he must establish that he is entitled to relief pursuant to section 10:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any

---

2. Although the parties do not raise the issue of jurisdiction in litigation controlled by the FAA, we note that it is well established that state courts have concurrent jurisdiction with federal courts to enforce the FAA. *E.g., St. Fleur v. WPI Cable Sys./Mutron,* 450 Mass. 345, 879 N.E.2d 27, 30 (2008); *Anderson v. Golf Mill Ford, Inc.,* 383 Ill.App.3d 474, 322 Ill.Dec. 104, 890 N.E.2d 1023, 1030 (2008). Thus, unless the parties' agreement requires that a confirmation claim be made in federal court—and the agreement at issue herein does not—then the claim may properly be brought in state or federal court, and the trial court herein properly assumed jurisdiction over the dispute.

other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The FAA further explicitly provides that "[n]otice of a motion to vacate ... an award *must* be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added). The upshot of these provisions, therefore, is that if a party is unhappy with an arbitration award and hopes to have the award vacated, he must (1) file the motion to vacate the award within three months after the award was filed or delivered; and (2) establish that one or more of the circumstances outlined in section 10 exist such that vacation is warranted.

Here, the arbitration award entered against Weldon was entered on December 11, 2006, and sent to Weldon via U.S. mail on December 12, 2006. Weldon filed his motion to vacate the award on August 6, 2007, nearly eight months later, well beyond the three-month deadline set forth in section 12 of the FAA.

In an effort to ameliorate the untimeliness of the motion to vacate, Weldon argues that it was not proper to serve notice of the arbitration award on him via U.S. mail. He contends that we should look to the Indiana Uniform Arbitration Act provisions on service because the FAA is silent on that issue. Appellant's Br. p. 17. The cases he cites in support of that contention, however, look first to the parties'

agreement and only turn to state law if the agreement was silent on the issue.[3] *MBNA Am. Bank, N.A. v. Credit,* 281 Kan. 655, 132 P.3d 898, 901 (2006) (applying state law to determine proper method of service only after determining that the parties' agreement was silent on the issue); *MBNA Am. Bank, N.A. v. Straub,* 12 Misc.3d 963, 815 N.Y.S.2d 450, 454 (N.Y.City Civ.Ct.2006) (holding that "[i]f an arbitration organization is named in the agreement, its rules may govern service of the award").

Here, the agreement clearly and explicitly states that "[t]he arbitration shall be conducted by the National Arbitration Forum ... under the Code of Procedure in effect at the time the Claim is filed." Appellant's App. p. 140–41. Turning to the NAF's Code of Procedure that was in effect in October 2006, we observe that Rule 39D provides as follows:

Parties consent to service of the Award or Order and of all Documents, notices, and Orders necessary to confirm an Award or Order or to enter a judgment based on an Award or Order *by Delivery, as defined by Rule 2M,* at any address of the Party or Representative of record with the Forum.

NAF Procedure Rule 39D (May 2006), *available at* http://www.adrforum.com (last visited Sept. 16, 2008) (emphasis added). Rule 2M defines "Delivery" as follows: "Delivery: Delivery to the address of Party, the Forum or an Arbitrator *by the postal service of the United States* or any country, or by a reliable private service, or by facsimile, e-mail, electronic or computer transmission." NAF Procedure Rule 2M (May 2006) (emphasis added).

---

**3.** The third case cited by Weldon in support of this proposition is an unreported New York case; we remind Weldon that not-for-publica-

tion decisions have no precedential value. Ind. Appellate Rule 65(D). Thus, we will not consider that decision.

Here, the undisputed evidence establishes that the NAF mailed a copy of the arbitration award to Weldon's correct address via U.S. mail on December 12, 2006. Appellant's App. p. 145. That is a proper method of service under the NAF Code of Procedure, which applies to this dispute pursuant to the parties' agreement. Under these circumstances, we see no reason to toll the otherwise applicable three-month deadline included in section 12 of the FAA.

Inasmuch as Weldon failed to file his motion to vacate within the applicable statutory timeframe, he is not entitled to that relief and the trial court properly denied his motions to vacate and for summary judgment. Furthermore, as noted above, the FAA mandates confirmation of the arbitration award unless the award is vacated, modified, or corrected. 9 U.S.C. § 9. Here, because Weldon failed to establish that vacation was warranted, the trial court was required to confirm the arbitration award. Thus, summary judgment was properly entered in favor of Asset Acceptance.

### B. Jurisdiction

■ In his reply brief, Weldon argues for the first time that the FAA's three-month time limit does not "prevent a party who did not participate in an arbitration proceeding from challenging the validity of the award *at any time* on the basis that no written agreement to arbitrate existed between the parties." Reply Br. p. 10. Initially, we note that no new issues may be raised in a reply brief. Ind. Appellate Rule 46(C). Consequently, Weldon has waived this argument.

■ Waiver notwithstanding, we will assume solely for argument's sake that whether an agreement to arbitrate existed is (1) an issue that may be raised at any time, and (2) an issue of law that must be determined by a court rather than the arbitrator. Here, Asset Acceptance designated the parties' credit agreement in support of its cross-motion for summary judgment.[4] Weldon's sole argument appears to be that his signature does not appear on the agreement in the record; consequently, Asset Acceptance has offered no valid and binding arbitration agreement. We cannot agree. It is well established that a credit cardholder may agree to arbitration "by conduct[.]" *Straub*, 815 N.Y.S.2d at 452; *see also Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) (holding that "[a]lthough a party is bound by an arbitral award only where it has agreed to arbitrate, an agreement may be implied from the party's conduct"); *Nationwide Ins. Co. v. Heck*, 873 N.E.2d 190, 196 n. 1 (Ind.Ct.App.2007) (holding that an implied contract arises out of the acts and conduct of the parties coupled with a mutual agreement and intent to promise); *McCart v. Chief Exec. Officer in Charge*, 652 N.E.2d 80, 85 (Ind.Ct.App.1995) (holding that an implied contract is equally as binding as an express contract).

---

4. Weldon directs our attention to 9 U.S.C. § 13, which requires that the party seeking confirmation of an arbitration award must file a number of documents, including the arbitration agreement, at the time it files the initial motion. Asset Acceptance filed no documentation other than the arbitration award at the time it filed its motion for confirmation with the trial court. Inasmuch as it eventually filed the arbitration agreement in support of the cross-motion for summary judgment, however, we do not believe it a good use of judicial resources to dismiss for this reason. It would be elevating form over substance to reverse the trial court because a document that is now in the record was not in the record at the outset of the litigation. Weldon had the opportunity to raise arguments about the document and the trial court had the opportunity to evaluate it before ruling on the cross-motions. Thus, we decline to rule in Weldon's favor on this basis.

■ Here, MBNA promised to loan Weldon money via a credit card in exchange for Weldon's promise to repay the funds in a timely fashion. The written agreement contains a binding arbitration provision. Although Weldon's signature does not appear on the document, his assent was implied from his conduct—when he used the MBNA credit card repeatedly, he impliedly consented to the terms of the credit agreement, including the binding arbitration provision. Under these circumstances, we find that the arbitration agreement included in the record is valid and binding on both parties. Thus, the arbitrator properly assumed jurisdiction over the arbitration proceedings.

The judgment of the trial court is affirmed.

MATHIAS, J., concurs.

BROWN, J., dissents with opinion.

BROWN, Judge, dissenting.

I respectfully dissent. The majority holds that Weldon waived his argument that the FAA's three-month time limit does not prevent a party from challenging the validity of the award at any time. The majority then addresses Weldon's argument, waiver notwithstanding, and concludes that "the arbitrator properly assumed jurisdiction over the arbitration proceedings." Op. at 1187. I disagree with the majority's conclusions that Weldon waived his argument regarding jurisdiction and that Weldon assented to the terms of the credit agreement.

In Weldon's appellant's brief, he did not explicitly argue that the FAA's three-month time limit did not prevent him from challenging the validity of the award at any time, but he repeatedly attacked the arbitrator's jurisdiction. *See* Appellant's Brief at 8, 14, 15, 23. I view Weldon's argument in his reply brief regarding the FAA's three-month time limit as being a response to Asset Acceptance's argument in its appellee's brief that Weldon waived any claim he may have had to vacate the arbitration award because he failed to timely file his motion to vacate. *See* Appellee's Brief at 10–11. Thus, I would hold that Weldon did not waive his argument by raising it for the first time in his reply brief, as appellee asserts.

Weldon argues that 9 U.S.C. § 12, which governs the three-month deadline for filing a notice of a motion to vacate, does not prevent him from challenging the validity of the arbitration award at any time. I find *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir.1998), instructive. In that case, Exalon Industries, Inc. ("Exalon") failed to respond to a notice of arbitration, and the arbitrator entered an award for MCI Telecommunications Corp. ("MCI"). *Id.* at 428. MCI filed an action to enforce the arbitration award in district court. *Id.* Exalon responded by denying the existence of a valid arbitration award and arguing that no written agreement existed between the parties binding them to arbitrate the controversy. *Id.* The court held that, under the FAA, "determining whether there is a written agreement to arbitrate the controversy in question is a first and crucial step in any enforcement proceeding before a district court." *Id.* at 429. The court concluded that "as a general matter, [9 U.S.C. § 12] . . . and the other enforcement provisions of the FAA, do not come into play unless there is a written agreement to arbitrate." *Id.* at 430. The court also concluded:

> A party that contends that it is not bound by an agreement to arbitrate can therefore simply abstain from participation in the proceedings, and raise the inexistence of a written contractual agreement to arbitrate as a defense to a proceeding seeking confirmation of the arbitration award, without the limita-

tions contained in [9 U.S.C. § 12], which are only applicable to those bound by a written agreement to arbitrate. Of course, if a court later determines that an arbitration agreement was in effect, and that the non-appearing party was bound by its conditions, the FAA would then fully come into operation, including the time limitations of [9 U.S.C. § 12].

*Id.* Based upon *MCI Telecommunications Corp.*, I would conclude that 9 U.S.C. § 12 does not come into play if there is no agreement to arbitrate, and that Weldon can argue that there was no agreement to arbitrate. *See also Danner v. MBNA America Bank, N.A.*, 369 Ark. 435, 255 S.W.3d 863, 868 (2007) (holding that 9 U.S.C. § 12 does not come into play unless there is a written agreement to arbitrate).[5]

The majority concludes that Weldon's assent to the arbitration agreement was implied from his conduct when he used his MBNA credit card repeatedly. However, the record reveals that Weldon made his last purchase and payment in 1999, which was two years before the date appearing on the credit card terms containing the agreement to arbitrate on which Asset Acceptance relies. **(Appellant's Appendix at 142)** Asset Acceptance does not designate evidence that indicates that Weldon used his credit card after November 1999. Thus, I would conclude that the 2001 arbi-

tration agreement is inapplicable to the instant claim. *See, e.g., Harlow v. Parkevich*, 868 N.E.2d 822, 828 (Ind.Ct.App. 2007) (holding that disputes that occurred before a letter containing an alternative dispute resolution ("ADR") agreement was sent were not covered by the letter or its ADR provision); *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 291 (Ind.Ct.App.2001) ("We are bound to resolve doubts in favor of arbitration, but Accurate Metal's claims of pre-agreement wrongdoing do not reasonably fit within the specific language the parties used in the agreement."). Consequently, I would reverse the trial court's grant of summary judgment in favor of Asset Acceptance.

---

**5.** In drawing this conclusion, I am mindful of *DeLorto v. United Parcel Service, Inc.*, 401 F.Supp. 408 (D.C.Mass.1975), which cited *Hill v. Aro Corp.*, 13 Ohio Misc. 19, 275 F.Supp. 482 (N.D.Ohio 1967). In *DeLorto*, the court held:

Plaintiff seeks to avoid the effect of the lapse of time by asserting that the arbitrator did not have jurisdiction of the dispute and that, therefore, the time bar does not apply. This contention has been disposed of adversely to plaintiff by a ruling handed down in *Hill v. Aro Corp.*, 275 F.Supp. 482, 385–87[sic] (N.D.Ohio, 1967), where the court ruled in substance that the expiration of the three month period provided for by the federal stat-

ute is an absolute bar to the commencement of litigation, and the fact that plaintiff premised his case as an attack on the jurisdiction of the arbitrator to make the award is immaterial.

401 F.Supp. at 409. However, it does not appear that the existence of an agreement to arbitrate was an issue in *DeLorto*, and in *Hill v. Aro Corp.* the issue was whether the parties had specified the county for arbitration in their arbitration agreement as required by state law. 275 F.Supp. at 486–487. Thus, as in *DeLorto*, there was not the issue of a lack of agreement to arbitrate making these cases distinguishable.